CASE 83—PROSECUTION AGAINST H. J. ARENZ FOR KEEP-
ING A DISORDERLY HOUSE.—May 21.

# Arenz v. Commonwealth

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Defendant Convicted and appeals—Affirmed.

1. Disorderly House—Elements and Nature of Offense—A house
in which persons are permitted to gather and gamble in vio-
lation of law is a disorderly one, however quietly it may
be done.
2. Same—Evidence—On a prosecution for keeping a disorderly
house, evidence held to show that the defendant's house was
simply a gambling establishment, where people bet on the
rise and fall of prices.

FLOURNEY AND REED attorneys for appellant.

We rely for a reversal of this case on the case of Common-
wealth v. McCarter, 25th Ky. Law. Rep., page 294, for we think
that the indictments are similar. The indictment in this case
does not charge with whom the betting or wagering was done,
nor whether it was done with the appellant. We do not think
the indictment in this case charges in apt and sufficient language
any public offense. We think that the demurrer ought to have
been sustained, not only on the authority of the Commonwealth
v. McCarter, but also on the authority of the Commonwealth v.
L. & N. R. R., 26th Ky. Law. Rep., page 493, and Commonwealth
v. L. & N. R. R., 25th Ky. Law Rep., page 1452.

N. B. HAYS, Atty. Gen.; CHAS. H. MORRIS, JNO. G. LOVETT
and ALLEN W. BARKELEY, for appellee.

POINTS AND AUTHORITIES.

We contend that this indictment is good because it complies

with all the requirements of the Criminal Code of Practice, with regard to the drawing of indictments. It states in concise and ordinary language the facts constituting the offense, and in such a manner as to enable a person of ordinary understanding to know what is intended; and with such a degree of certainty as to enable the court to pronounce judgment on the verdict according to the legal rights of the case. (Crim. Code, sec. 122, 124; Beadles &c., v. McElrath, &c., 85 Ky., 230; Barnard v. Backhaus, 52 Wis., 593; Kneffer v. Com., 15 Ky. Law Rep., 176; Smith v. W. U. Tel. Co., 84 Ky., 664; Lyons v. Hodgen, 90 Ky., 280; Boyd. Com. Co. v. Coates, 69 S. W., 1090; Farmers and Drovers' Bank v. Unser, 13 Ky. Law Rep., 965; Weathers v. Threlkeld, Id.; Sawyer Wallace Co. v. Taggart, 14 Bush, 727; Paducah Com. Co. v. Boswell, 93 S. W., 144; Saunders v. Baker (Mo.), 99 S. W., 51; Cheek v. Comth., 79 Ky., 359; Bolinger v. Com., 17 Ky. Law. Rep., 1122; Johnson v. Comth., 12 Ky. Law Rep., 835.)

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

The grand jury of McCracken county returned an indictment against H. J. Arenz and others charging them with keeping a disorderly house, where, as charged in the indictment, "they unlawfully permitted divers persons to habitually assemble and habitually engage in buying, betting, wagering, and winning and losing money and property of value on the prospective rise and fall of prices on stocks, bonds, grain, cotton, meat, lard, and other products, but with no intention to deliver said stocks, bonds, grain, cotton, meat, lard, and other produce, to the great damage and common nuisance of all the good citizens of this commonwealth, against the peace and dignity of the commonwealth of Kentucky." The defendant Arenz was tried and fined $750, and from the judgment against him he appeals.

The facts charged in the indictment constitute a disorderly house. A disorderly house is not necessarily one in which there are breaches of the

peace or noise disturbing the public tranquility. It is a disorderly house within the meaning of the law if persons are permitted to gather there and gamble in violation of law, however quietly it may be done. Kneffler v. Commonwealth, 94 Ky., 359, 22 S. W. 446, 15 Ky. Law Rep., 176; Smith v. Commonwealth, 6 B. Mon. 21; Walker v. Commonwealth, 79 S. W. 191, 25 Ky. Law Rep., 729; 117 Ky., 727; 14 Cyc. 468. The proof by the commonwealth by a number of witnesses was that Arenz, doing business under the name of Paducah Commission Company, had at his place what was called a "spotting board," with all the different stocks sold in any exchange; that a telegraph wire ran into the room and the fluctuations of stocks were reported by telegraph. Those dealing put their money on what they wanted to invest in either to buy or sell. They were required to put up a margin, and, if the margin was insufficient, they dropped out or put up more. Corn, wheat, provisions, cotton, oats, and various stocks were sold. It was simply a putting up of money on futures. Large quantities of grain or cotton were bought and sold, while the party who bought or sold received nothing and had nothing to deliver. It is true that the defendant required them to sign a written contract which was substantially in these words: "It is herein agreed that there shall be actual delivery of all commodities which either of the parties hereto may buy or sell to or for the other party for future delivery, and it is agreed that actual delivery of such commodity shall be made by either party hereto upon three days' written notice given by the other party, demanding delivery of any commodity which may be dealt in by the said parties, and it is further agreed that each party shall pay cash for any commodities dealt in, either for immedi-

ate or future delivery, when said commodity shall be
legally and properly transferred and delivered. It
is further agreed that any property of any descrip-
tion sold by either of the parties hereto to the other
is to be delivered as herein stated on payment of the
contract price. Delivery of stocks and bonds shall
be made at the office of the Paducah Commission Com-
pany, and delivery of any other commodity herein
provided for, shall be made at the warehouse where
said commodity may be stored." The testimony for
Arenz tended to show that, if anybody wanted the
goods, he could always get them.

On this evidence the court instructed the jury as
follows:

" (1) If you shall believe from the evidence in this
case, beyond a reasonable doubt, that in this county
and within one year before the finding of the indict-
ment herein, the defendant, H. J. Arenz, under the
name of the Paducah Commission Company, did keep
and maintain an ill governed and disorderly house in
the city of Paducah, Kentucky, which house was
under the control and management of said defendant,
Arenz, and in whose house said defendant unlawfully
permitted divers persons to habitually assemble and
habitually engage in buying, betting, wagering, win-
ning and losing money, or property of value, on the
prospective rise or fall of prices in stocks, bonds,
grain, cotton, meat, lard, or other products with no
intention to deliver said stocks, bonds, grain, cotton,
meat, lard, or other products, then you will find the
defendant guilty, and by your verdict say how much
he shall be fined or how long he shall be imprisoned
in the county jail, or both so fined and imprisoned in
your discretion. But, unless you shall so believe to

the exclusion of a reasonable doubt, then the law is for the defendant, and you will find him not guilty.

" (2) The law presumes the defendant to be inno-cent until proven guilty beyond a reasonable doubt, and, if upon the entire case you have a reasonable doubt of defendant being proven guilty, or a reasonable doubt as to any fact necessary to establish his guilt, then you shall find him not guilty.

" (3) Although you may believe from the evidence in this case that actual delivery of the articles dealt in at defendant's place of business were not made, and that one of the parties to such transaction intended to or did resell articles purchased or sold before the time fixed by the contract for delivery, yet if you shall further believe from the evidence that at the time of making the contracts testified to that a mutual agreement was entered into in good faith between defendant and the persons dealing with him that the contracts made were to be performed by the delivery of the goods and the payment of the price, if either party demanded it, then the law is for the defendant, and you will find him not guilty."

These instructions were more favorable to the defendant than he was entitled to. The verdict of the jury is abundantly sustained by the evidence. The facts testified to by the witnesses abundantly show that the defendant's house was simply a gambling establishment where people bet on the rise and fall of prices. The law is not deceived by the mere form of transactions. It looks through the form to what was really done and to the actual intention of the parties.

Judgment affirmed.